UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Sister Karriemah H. Muqeet,

                    Plaintiff,                                      **MEMORANDUM & ORDER**
                                                                   24-CV-00822 (DG) (TAM)
          -against-

Home Depot U.S.A., Inc. and Anthony Gumbs,

                    Defendants.
-----------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

On January 11, 2024, Plaintiff Sister Karriemah H. Muqeet, then proceeding *pro se*,

commenced this action in the Supreme Court of the State of New York, County of Kings against

Defendants Home Depot U.S.A., Inc. ("Home Depot") and Anthony Gumbs.  *See* ECF No. 1-1;

*see also* Notice of Removal, ECF No. 1.  On February 5, 2024, Defendant Home Depot timely

removed the action to this Court.  *See generally* Notice of Removal.  On September 30, 2024,

Plaintiff – by that time represented by counsel, *see* ECF Nos. 12-14 – filed the operative

Amended Complaint, *see* Amended Complaint ("Am. Compl."), ECF No. 21.

Plaintiff asserts fourteen Causes of Action: (1) "TITLE VII -- Gender Discrimination,

Sexual Harassment, and Hostile Work Environment;" (2) "TITLE VII – Retaliation under Title

VII of the Civil Rights Acts of 1964, 42 U.S.C. S 2000e et seq.;" (3) "N.Y.C. Admin. Code §8-

107 – Gender Discrimination, Sexual Harassment and Hostile Work Environment in Violation of

New York City Human Rights Law;" (4) "N.Y.C. Admin. Code §8-107 – Retaliation in

Violation of New York City Human Rights Law;" (5) "N.Y. Exec. Law §296 – Gender

Discrimination, Sexual Harassment, and Hostile Work Environment in Violation of the New

York State Human Rights Law;" (6) "N.Y. Exec. Law §296 – Retaliation in Violation of the

New York State Human Rights Law;" (7) "Sexual Assault and Battery;" (8) "New York City

Admin. Code 8-603(a) – Assault and Battery;" (9) "Violations of the Americans with Disabilities Act, ('ADA['])] And Retaliation;" (10) "Violation of New York Executive Law §296;" (11) "Violation of New York Executive Law §296;" (12) "Violation of New York City Administrative Code §8-107;" (13) "Violation of New York City Administrative Code §8-107;" and (14) "Violation of New York City Administrative Code §8-107." *See generally* Am. Compl.

Pending before the Court is Defendant Home Depot's "Motion to Dismiss the Second, Seventh, Eighth and Ninth Causes of Action and a Time-Barred Portion of the First Cause of Action of Plaintiff's Amended Complaint," brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (the "Motion"). *See* Notice of Motion, ECF No. 25; *see also* Memorandum of Law in Support of Motion to Dismiss, ECF No. 25-1 ("Def. Br."); Reply Memorandum of Law ("Reply"), ECF No. 27.[1] Plaintiff opposes the Motion. *See* Memorandum of Law in Opposition to Motion to Dismiss, ECF No. 26 ("Pl. Br.").

As set forth below, the Motion is granted as follows: Plaintiff's First Cause of Action to the extent premised on conduct by Defendant Gumbs is dismissed; Plaintiff's Second Cause of Action to the extent premised on Defendant Home Depot's termination of Plaintiff's employment is dismissed; Plaintiff's Seventh Cause of action is dismissed; Plaintiff's Eighth Cause of Action is dismissed; and Plaintiff's Ninth Cause of Action is dismissed.

---

[1] Defendant Home Depot filed its motion to dismiss twice. *See* ECF Nos. 22, 25. The Court refers herein to the filing at ECF No. 25.

# BACKGROUND

## I.  Relevant Factual Background[2]

### A.  The Parties

Plaintiff alleges that she is a Muslim African American woman, that she is "the former Freight on Receiving Associate at Home Depot," that at all relevant times, she was an employee of Defendant Home Depot, and that she was terminated from her position in May 2023.  *See* Am. Compl. ¶ 4.

Plaintiff alleges that Defendant Home Depot operates a store at 579 Gateway Drive, Brooklyn, New York 11239 (the "Starrett City Store").  *See* Am. Compl. ¶ 5.

Plaintiff alleges that Defendant Gumbs was at all relevant times a "part-time Freight and Receiving Associate at Home Depot" and at all relevant times worked at the Starrett City Store. *See* Am. Compl. ¶ 7.

### B.  Plaintiff's Employment with Home Depot

Plaintiff alleges that she was hired by Defendant Home Depot on January 20, 2017.  *See* Am. Compl. ¶ 11.  Plaintiff alleges that on April 1, 2019, she began working as "Freight and Receiving Associate" in the Starrett City Store and that she worked night shift from 9:00 p.m. to 5:30 a.m. and took her break from 3:00 a.m. to 3:30 a.m.  *See* Am. Compl. ¶ 12.  Plaintiff alleges that she was the only Muslim African American woman working on the night shift and that most of the workers on the night shift were men.  *See* Am. Compl. ¶ 13.  Plaintiff alleges that "[o]n joining" the Starrett City Store, she began reporting to Assistant Manager David Leslie.  *See* Am.

---

[2]  The facts set forth in this section are taken from the Amended Complaint and documents attached to, incorporated by reference in, and/or integral to the Amended Complaint.  The Court notes that, in places, the Amended Complaint lacks clarity, including as to the timing of certain events.

Compl. ¶ 14.  Plaintiff alleges that during her employment, she received exceptional performance evaluations and that she received a rating of "exceeds expectations" in most categories and "meets expectations" in other categories.  *See* Am. Compl. ¶ 16.

Plaintiff alleges that the environment at Home Depot was sexually charged during the night shift at the Starrett City Store.  *See* Am. Compl. ¶ 18.

<u>Allegations Regarding Conduct by Defendant Gumbs</u>

Plaintiff alleges that "from the summer of 2019, Plaintiff noticed that on almost every occasion while she was working, Gumbs was leering at her and grinning."  *See* Am. Compl. ¶ 19.  Plaintiff alleges that Defendant Gumbs "would make kissing gestures, winking, raising his eyebrows, and passing sexual comments, making it extremely uncomfortable for Plaintiff to work in such environment."  *See* Am. Compl. ¶ 19.

Plaintiff alleges that she "would either walk away from Gumbs' visibility or inform Gumbs that she was not interested in him and that he must return to his work" but that Defendant Gumbs "kept harassing Plaintiff by hurling degrading sexual comments and making kissing gestures."  *See* Am. Compl. ¶ 21.  Plaintiff alleges that "[w]hen Gumbs did not stop leering at Plaintiff and harassing her, Plaintiff reported the matter to her supervisor Leslie."  *See* Am. Compl. ¶ 22.  Plaintiff alleges that "no action was taken by supervisor Leslie and the sexual harassment continued unchecked."  *See* Am. Compl. ¶ 23.

Plaintiff alleges that "in or around the summer of 2019, Gumbs showed Plaintiff a picture of her resting on a recliner in the break room, while grinning, raising his eyebrows up and down, and nodding at her."  *See* Am. Compl. ¶ 24.  Plaintiff alleges that she again told Defendant Gumbs she was not interested in him and asked him to delete the picture and left the breakroom. *See* Am. Compl. ¶ 25.  Plaintiff alleges that she reported this incident to Leslie but no action was

taken by Defendant Home Depot against Defendant Gumbs "and the sexual harassment continued unchecked." *See* Am. Compl. ¶ 26. Plaintiff alleges that no one from the management contacted Plaintiff to inform her of any investigation or outcome of any investigation and that Defendant Gumbs continued leering at Plaintiff and making sexual comments. *See* Am. Compl. ¶ 27.

Plaintiff alleges that "[i]n or around Autumn 2019, as Plaintiff was leaving the break room Gumbs walked in Plaintiff's path and showed her a video on his phone of a man and a woman having rough sex." *See* Am. Compl. ¶ 28. Plaintiff alleges that she was shocked and disgusted and that she told Defendant Gumbs with emphasis: "You don't know me like that. I am not interested in you; stay away from me!" *See* Am. Compl. ¶ 29. Plaintiff alleges that Defendant Gumbs "continued to stand his ground grinning at Plaintiff as she walked away." *See* Am. Compl. ¶ 29. Plaintiff alleges that she reported this incident to Leslie, but still no action was taken against Defendant Gumbs and "[n]o one contacted Plaintiff to inform her of the outcome of any investigation, because no investigation was conducted." *See* Am. Compl. ¶ 30.

Plaintiff alleges that on April 24, 2020, "when Plaintiff was eating her dinner and watching Lucy on television, although it was clear what show was on television Gumbs asked Plaintiff who was on television, and said in his dialect something to the effect 'Come on baby, you not gonna tell me . . . .'" *See* Am. Compl. ¶ 40. Plaintiff alleges that before Defendant Gumbs could say anything more, Plaintiff told Defendant Gumbs "Yes, that's Lucy on the television!" *See* Am. Compl. ¶ 40. Plaintiff alleges that during this interchange, "regretfully, Plaintiff asked Gumbs why his eyesight was weak, and if he was diabetic" and that Defendant Gumbs "responded by placing his hand over his crotch and making a masturbating gesture." *See* Am. Compl. ¶ 41. Plaintiff alleges that she got up and left the breakroom. *See* Am. Compl. ¶ 42.

Plaintiff alleges that immediately after leaving the breakroom, Plaintiff began crying and found herself walking past Leslie and Leslie asked Plaintiff "Sister, what's wrong?" *See* Am. Compl. ¶¶ 43-44. Plaintiff alleges that she told Leslie what happened in the breakroom and Leslie returned to Plaintiff with an incident form and told her that he had spoken with Kevin who confirmed what had happened, and that she should write an incident report. *See* Am. Compl. ¶¶ 45-46.[3] Plaintiff alleges that Leslie told Plaintiff that he and Ricky had spoken to Defendant Gumbs, who confirmed what Plaintiff had said and demonstrated the motion to them. *See* Am. Compl. ¶ 46.[4] Plaintiff alleges that "Leslie reassured 'Don't worry Sister I got you.'" *See* Am. Compl. ¶ 46. Plaintiff alleges that she submitted a report of this incident, that no action was taken against Defendant Gumbs, that Plaintiff was never informed of the outcome of any investigation, that Plaintiff continued to see Defendant Gumbs in the store, and that Plaintiff asked Leslie why no action was taken. *See* Am. Compl. ¶ 47.

Plaintiff alleges that "[i]n or around late spring or early summer 2020," Defendant Gumbs threw a surge protector at Plaintiff and that Plaintiff "had done nothing to prompt such an assault." *See* Am. Compl. ¶ 48. Plaintiff alleges that she reported this incident to Leslie "who promised to get to it, but still no action was taken against Gumbs." *See* Am. Compl. ¶ 49. Plaintiff alleges that by failing to take any action, "the management of Home Depot let the environment of sexual harassment and assault to continue unchecked." *See* Am. Compl. ¶ 49.

Plaintiff alleges that on July 1, 2020, when Plaintiff removed the top of the recycling bin in the breakroom to remove the cans and bottles from the bin for recycling, Defendant Gumbs

---

[3] "Kevin" is not further identified in the Amended Complaint. *See generally* Am. Compl.

[4] "Ricky" is identified in the Amended Complaint as an Assistant Store Manager. *See* Am. Compl. ¶ 77.

picked up the top of the recycling bin and sidestepped towards the bin to replace the top, that Plaintiff tried to stop Defendant Gumbs by holding on to the top, that Defendant Gumbs started "mumbling and cursing in Caribbean," that Plaintiff told Defendant Gumbs "I'm not up to dealing with you today" and let go of the recycling bin top, and that Defendant Gumbs took full grip of the recycling bin top, raised it above his head then brought the top of the recycling bin crashing down on Plaintiff's right shoulder blade. *See* Am. Compl. ¶¶ 50-53.

Plaintiff alleges that after Defendant Gumbs hit Plaintiff with the recycling bin top, Plaintiff immediately collected her belongings and went to "the supervisor Paul" and asked him for his phone. *See* Am. Compl. ¶ 54. Plaintiff alleges that she announced on the speaker phone that Defendant Gumbs had hit her and she was leaving and that she then left the building. *See* Am. Compl. ¶ 55. Plaintiff alleges that "[b]y the time Plaintiff reached the parking lot, Leslie came near her vehicle and asked her what had happened" and told her that she must write an incident report. *See* Am. Compl. ¶ 56. Plaintiff alleges that Leslie told Plaintiff to stay and finish her shift because Defendant Home Depot was understaffed, that Plaintiff agreed to stay and finish her shift, and that Plaintiff went back to the store and wrote her incident report and then went back to work. *See* Am. Compl. ¶¶ 57-58.

Plaintiff alleges that while Plaintiff was working, Defendant Gumbs "came out of an office after talking to Leslie, approached Plaintiff and started cursing and called her a fucking hypocrite and cursed in Caribbean." *See* Am. Compl. ¶ 59. Plaintiff alleges that she then collected her belongings, and as she was leaving bumped into Leslie and told him what had happened. *See* Am. Compl. ¶ 60. Plaintiff alleges that Leslie asked Plaintiff to stay and finish her shift and told her he would escort Defendant Gumbs out of the store. *See* Am. Compl. ¶ 61.

Plaintiff alleges that she was so badly shaken that she thought she needed a protective

order from the court.  *See* Am. Compl. ¶ 62.  Plaintiff alleges that she finished her shift and then went to report the incident to the New York City Police Department at the 75th Precinct and that Officer Christopher DeBernardo of the 75th Detective Squad was assigned to the case.  *See* Am. Compl. ¶ 63.

Plaintiff alleges that on July 1, 2020, she called "Home Depot's Human Resources Corporate" and also filed a complaint over the phone with the New York City Commission on Human Rights ("NYCCHR").  *See* Am. Compl. ¶¶ 64-65.  Plaintiff alleges that "[d]espite the repeated verbal and written complaints regarding Gumbs, Home Depot failed to follow their own policies and procedures on sexual harassment in the workplace which resulted in Plaintiff being assaulted and battered."  *See* Am. Compl. ¶ 66.  Plaintiff alleges that Detective DeBernardo emailed Plaintiff that Defendant Home Depot was "stonewalling" him and refusing to respond to his calls or to police officers who made visits to the Starrett City Store for information about Defendant Gumbs.  *See* Am. Compl. ¶ 67.

Plaintiff alleges that in November 2020, the police department contacted her and instructed her to follow up on her complaint with NYCCHR and informed her that Defendant Gumbs would be "turning himself in to the police next week."  *See* Am. Compl. ¶ 68.  Plaintiff alleges that she went back to work while Defendant Home Depot and NYCCHR investigated the matter.  *See* Am. Compl. ¶ 69.  Plaintiff alleges that shortly thereafter, Plaintiff "received a call from Home Depot asking her if she would agree to work on the day shift" and that Plaintiff agreed and started working on the day shift.  *See* Am. Compl. ¶ 71.

Plaintiff alleges that after one week of working on the day shift, she was told by the assistant store manager that Defendant Gumbs no longer worked at the Starrett City Store and that she could go back to the night shift.  *See* Am. Compl. ¶ 72.  Plaintiff alleges that Defendant

Home Depot had transferred Defendant Gumbs to Defendant Home Depot's Mill Basin Store, 5700 Avenue U, Brooklyn, New York 11234. *See* Am. Compl. ¶ 72.

*Allegations Involving Sexually Explicit Music*

Plaintiff alleges that the atmosphere in the Starrett City Store during the night shift "was permeated with sexual animus" and that "[s]ince Plaintiff started working at [the Starrett City Store], the employees played music which included sexually explicit lyrics on their personal Bose and JB speakers as well as on Home Depot's merchandise speakers while they worked during the night shift." *See* Am. Compl. ¶ 73.[5] Plaintiff alleges that she "had spoken to the other few female employees on her shift, and they all agreed that the music had sexually explicit lyrics and that it permeated the workplace to create an atmosphere for sexually harassment during the night shift at the Starrett City store." *See* Am. Compl. ¶ 74.

Plaintiff alleges that "[i]n or around summer of 2020, Plaintiff spoke with supervisor Tysheem about the music and told him that forcing employees to listen to sexually explicit music while working is sexual harassment." *See* Am. Compl. ¶ 75. Plaintiff alleges that "Supervisor Tysheem who also worked during the night shift said words to the effect 'Yeah, I know' and Tysheem continued to play music with sexually explicit lyrics during the time he and Plaintiff worked together." *See* Am. Compl. ¶ 75. Plaintiff alleges that "Supervisor Tysheem would deliberately come to the place where Plaintiff would be saying her prayers and play the sexually explicit music loudly." *See* Am. Compl. ¶ 76.

Plaintiff alleges that "[i]n or around Summer and early Autumn 2020, Plaintiff brought to the attention of Assistant Store Managers Leslie, Joseph, Ricky and Cunningham that they were

---

[5] Plaintiff alleges that the music included "sexually explicit lyrics, like want to fuck you all night, ya that bitch does it right she suck my dick and swallow it all, just fuck that bitch any other way and then kick her out." *See* Am. Compl. ¶ 20.

allowing an atmosphere for sexual harassment and assault to thrive at Home Depot Starrett City store by allowing employees, among other things, to loudly play music with sexually explicit lyrics on their personal devices as well as on store merchandise display speakers while they worked." *See* Am. Compl. ¶ 77.  Plaintiff alleges that she "pointed out that forcing employees to listen to sexually explicit music while they work is sexual harassment and creates a hostile work environment," but that no action was taken.  *See* Am. Compl. ¶ 78.

Plaintiff alleges that when Plaintiff complained about the sexually explicit lyrics in the music played on speakers during the night shift to the Store Manager Jason Huertas, he paused as if thinking about what Plaintiff said and responded, "Yeah, I know."  *See* Am. Compl. ¶ 79. Plaintiff alleges that he did not stop the employees from playing sexually explicit songs.  *See* Am. Compl. ¶ 79.

Plaintiff alleges that "[i]n or around late November or early December 2020, Home Depot told their employees on the night shift that they could not wear earbuds while they worked due to safety concerns."  *See* Am. Compl. ¶ 80.  Plaintiff alleges that "[s]ince this rule was enforced the frequency of graphic sexually explicit and derogatory lyrics of women songs while at work intensified."  *See* Am. Compl. ¶ 81.  Plaintiff alleges that "[t]he employees would play the song again and again with lyrics such as 'Coming in her mouth, the bitch did me good, licking another woman.'"  *See* Am. Compl. ¶ 81.  Plaintiff alleges that "[t]he co-workers and supervisor Tysheem continued to play 'sexually explicit music' over and over."  *See* Am. Compl. ¶ 81.

### *Allegations Involving Damian and Laronda*

Plaintiff alleges that on August 5, 2019, she saw "Damian chasing another coworker Laronda on a reach vehicle from the back of the store at receiving (where trucks are unloaded) to

the front door yelling and cursing at Laronda." *See* Am. Compl. ¶ 31.[6] Plaintiff alleges that she

heard Damian screaming and yelling: "You Bitch you don't fucking know me. I have been here

six years, but you don't fucking know me." *See* Am. Compl. ¶ 32. Plaintiff alleges that she

"clearly heard Laronda say in sum and substance, 'I don't know you. You need to leave me

alone.'" *See* Am. Compl. ¶ 33. Plaintiff alleges that she saw Laronda walk to the exit door at the

front of the store to call to the manager to let her out and that Plaintiff saw Damian walk away

from Laronda towards the back of the store and that as Damian walked past Plaintiff, he looked

at her and said to her, "Bitch! I'll fuck you up too!" *See* Am. Compl. ¶¶ 34-35. Plaintiff alleges

that he also yelled: "[Y]ou all need to be fucked up. I am fucking thirty-five years old, I've been

here six years, you don't know who the fuck I am." *See* Am. Compl. ¶ 35. Plaintiff alleges that

she never witnessed Damian treat any man this way. *See* Am. Compl. ¶ 35.

Plaintiff alleges that she reported the incident to Assistant Store Manager Cunningham

and told him that she was uncomfortable and also wanted to leave. *See* Am. Compl. ¶ 36.

Plaintiff alleges that Cunningham asked Plaintiff not to leave as they were understaffed and told

Plaintiff that "if she wants something done, she needs to write up the incident." *See* Am. Compl.

¶ 37. Plaintiff alleges that she wrote up the incident but that no action was taken by Defendant

Home Depot on this report and that Damian continued working at the Starrett City Store. *See*

Am. Compl. ¶¶ 38-39.

### C. Plaintiff's COVID Diagnosis

Plaintiff alleges that despite repeated requests and complaints, no corrective action was

taken by the management of the Starrett City Store. *See* Am. Compl. ¶ 83. Plaintiff alleges that

---

[6] "Damian" and "Laronda" are not further identified in the Amended Complaint. *See generally* Am. Compl.

"[d]ue to the explicitly loud sexual music and sexual harassment Plaintiff became sick and had to seek medical treatment." *See* Am. Compl. ¶ 84; *see also* Am. Compl. ¶ 82 (alleging that Plaintiff contacted NYCCHR "about the sexual harassment and the sexually explicit music, which were making her sick"). Plaintiff alleges that in June 2021, Plaintiff was "so sick and her immune system was so compromised that she was diagnosed with COVID and was no longer able to work" and that she "applied for disability leave because of COVID." *See* Am. Compl. ¶ 85. Plaintiff alleges that Defendant Home Depot "claimed they did not get the medical report, which was sent in May 2023, and that Home Depot was waiting for her doctor to fill out the paperwork." *See* Am. Compl. ¶ 86. Plaintiff alleges that "Home Depot Hartford Insurance continued to receive Plaintiff's medical reports up until March 2024." *See* Am. Compl. ¶ 86.

### D. Termination of Plaintiff's Employment with Home Depot

Plaintiff alleges that "[i]n February 2024, Plaintiff was informed that she had been fired from her job effective May 2023." *See* Am. Compl. ¶ 87; *see also* Am. Compl. ¶ 17. With respect to the reason(s) for her termination, Plaintiff alleges – somewhat inconsistently – both that "Defendant terminated Plaintiff's employment due to her disability," *see* Am. Compl. ¶ 172; *see also* Am. Compl. ¶¶ 179, 201, and that she "believes that Defendant Home Depot fired her because she had filed the present lawsuit against the Defendant Home Depot in January 2024 and had previously complained about sexual harassment, assault, and battery at work and had a disability," *see* Am. Compl. ¶ 88.

### E. NYCCHR Complaint/EEOC Charge

On May 3, 2021, Plaintiff swore out a Verified Complaint, which was filed with NYCCHR and the Equal Employment Opportunity Commission ("EEOC"). *See* ECF No. 25-2 at 4-7; Am. Compl. ¶ 10; *see also* Am. Compl. ¶ 8 (alleging that Plaintiff exhausted her

administrative remedies at the EEOC).[7]  Plaintiff alleges that the EEOC issued a "Notice of Right to Sue" on October 25, 2023.  *See* Am. Compl. ¶ 9; *see also* Determination and Notice of Rights, ECF No. 21-1.

## II.     Procedural Background

On January 11, 2024, Plaintiff commenced this action in the Supreme Court of the State of New York, County of Kings.  *See* ECF No. 1-1; *see also* Notice of Removal, ECF No. 1.  On February 5, 2024, Defendant Home Depot filed a Notice of Removal stating, *inter alia*, that "Plaintiff's Complaint constitutes a civil action arising under the laws of the United States, namely, Title VII, 42 U.S.C. § 2000e, *et seq*., and therefore is an action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, and is removable to this Court pursuant to 28 U.S.C. § 1441(a)."  *See* Notice of Removal at 3.[8]  On February 12, 2024, Defendant Home Depot filed an Answer.  *See* ECF No. 8.

On September 30, 2024, Plaintiff filed the operative Amended Complaint.  *See* Am. Compl.  On January 21, 2025, Defendant Home Depot filed the Motion, *see* Notice of Motion; *see also* Def. Br.; Reply, which Plaintiff opposes, *see* Pl. Br.[9]

---

[7]   Next to the caption, the Verified Complaint lists both "Complaint No. M-ER-OS-20-89047" and "Federal Charge No. 16F-2021-00226C."  *See* ECF No. 25-2 at 4.  The parties do not appear to dispute that the Verified Complaint and the EEOC Charge are one and the same.  The Court hereinafter refers to the Verified Complaint as the "EEOC Charge."  The parties also do not appear to dispute that that the EEOC Charge was filed on May 3, 2021.  *See* Def. Br. at 2, 5; *see generally* Pl. Br.  When citing to the EEOC Charge, the Court uses the page numbers generated by the Court's electronic case filing system ("ECF").

[8]   The Notice of Removal further states that "Plaintiff's state law claims are so related to her federal claim that they form part of the same case or controversy, and are therefore claims over which this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), rendering Plaintiff's Complaint removable to this Court pursuant to 28 U.S.C. § 1441(c)."  *See* Notice of Removal at 4.

[9]   As discussed further below, Plaintiff has abandoned her Seventh and Eighth Causes of Action.

## STANDARD OF REVIEW

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept all 'well-pleaded factual allegations' in the complaint as true" and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). However, "more than labels and conclusions" are required and "formulaic recitation[s] of the elements of a cause of action will not do." *See Twombly*, 550 U.S. at 555. Factual allegations "must be enough to raise a right to relief above the speculative level," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *See id.* at 558. A court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Twombly*, 550 U.S. at 555)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that "factual allegations must be sufficient to support necessary legal conclusions"). "In considering a motion to dismiss for failure to state a claim, '[a] district court is normally required to look only to the allegations on the face of the complaint,'" though "[it] may consider documents that 'are

attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

## DISCUSSION

As set forth below, the Motion is granted as follows: Plaintiff's First Cause of Action to the extent premised on conduct by Defendant Gumbs is dismissed; Plaintiff's Second Cause of Action to the extent premised on Defendant Home Depot's termination of Plaintiff's employment is dismissed; Plaintiff's Seventh Cause of Action is dismissed; Plaintiff's Eighth Cause of Action is dismissed; and Plaintiff's Ninth Cause of Action is dismissed.

## I. Plaintiff's First Cause of Action

Defendant Home Depot argues that the portion of Plaintiff's Title VII hostile work environment claim (First Cause of Action) premised on Defendant Gumbs' alleged conduct must be dismissed as time-barred. *See* Def. Br. at 10-11. More specifically, Defendant Home Depot argues that each of the alleged actions attributed to Defendant Gumbs occurred more than 300 days prior to the May 3, 2021 filing of the EEOC Charge, *see* Def. Br. at 11, and that "Plaintiff's time-barred allegations against co-worker Gumbs have absolutely no relation to her separate and distinct allegation about music played by others on the overnight shift" and therefore her Title VII hostile work environment claim premised on Defendant Gumbs' conduct "is not salvaged by the continuing violation doctrine," *see* Reply at 2-5.

Plaintiff argues that the continuing violation doctrine applies to Plaintiff's Title VII hostile work environment claim "as the allegations describe a persistent pattern of sexual harassment that collectively constitutes a single unlawful employment practice" and therefore, "Plaintiff's claim is not time-barred." *See* Pl. Br. at 8.

For the reasons set forth below, Plaintiff's Title VII hostile work environment claim to the extent premised on conduct by Defendant Gumbs is dismissed.

## A. Applicable Law

As relevant here, Title VII of the Civil Rights Act of 1964 ("Title VII") provides:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*See* 42 U.S.C. § 2000e-2(a).

Also as relevant here, Title VII provides:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

*See* 42 U.S.C. § 2000e-5(e)(1); *see also Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (noting that "[u]nder Title VII, individuals alleging discrimination must file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice

occurred" (quotation omitted)).  The requirement in 42 U.S.C. § 2000e-5(e)(1) "operates as a statute of limitations."  *See Banks*, 81 F.4th at 259 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).  "An exception to the 300-day rule [set forth in 42 U.S.C. § 2000e-5(e)(1)] applies . . . if the discrimination constitutes a 'continuing violation.'"  *See id.*

The continuing violation doctrine "'provides an exception to the normal knew-or-should-have-known accrual date' – meaning an exception to how accrual normally works."  *See Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (quoting *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022)).  "For claims that are 'composed of a series of separate acts that collectively constitute one unlawful . . . practice,' the continuing violation doctrine lays out an alternative framework for evaluating accrual."  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan* (*Morgan*), 536 U.S. 101, 117 (2002)).  Hostile work environment claims "are subject to the continuing violation doctrine because, unlike discrete acts, '[t]heir very nature involves repeated conduct.'"  *See id.* (quoting *Morgan*, 536 U.S. at 115).  "[T]he continuing violation doctrine provides that such claims do not accrue – and the statute of limitations period does not begin to run – 'until the last discriminatory act in furtherance of' the hostile work environment."  *Id.* (quoting *Tassy*, 51 F.4th at 532).

"A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."  *Morgan*, 536 U.S. at 120.  "In order for a timely incident to prolong a hostile work environment created by earlier actions, the timely incident must be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment."  *Sanderson v. New York State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014) (citing *Morgan*, 536 U.S. at 118).

The United States Court of Appeals for the Second Circuit has stated that *Morgan* "requires courts to make an individualized assessment of whether incidents and episodes are related" but that "*Morgan's* discussion . . . does not limit the relevant criteria, or set out factors or prongs." *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (citing *Morgan*, 536 U.S. at 118); *see also Smith v. Nat'l Grid USA*, No. 21-CV-06899, 2025 WL 1248676, at *9 (E.D.N.Y. Apr. 30, 2025) (stating that "while the Second Circuit has not yet endorsed a specific test for determining whether alleged timely and untimely harassing acts are 'sufficiently related,' district courts have considered factors including (1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial action" (quotation omitted)); *Borden v. City of New York*, No. 23-CV-08330, 2025 WL 754147, at *4 (E.D.N.Y. Mar. 10, 2025) (stating: "[I]f any act alleged to contribute to a hostile work environment falls within the statutory time period, the court must determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice. If so, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. This inquiry turns on whether the timely and untimely actions are sufficiently similar in kind. Factors courts consider for the relatedness determination include the similarity of the environment in which the incidents took place, the nature of the incidents, and the temporal discontinuity of the incidents. Ultimately, the relatedness inquiry is an individualized assessment, owing to the fact-specific and sensitive nature of hostile-work-environment claims" (quotations and citations omitted)).

### B. Plaintiff's First Cause of Action to the Extent Premised on Conduct by Defendant Gumbs Is Dismissed

Because Plaintiff filed the EEOC Charge on May 3, 2021 alleging, *inter alia*, a hostile

work environment, any act that occurred on or before July 6, 2020 is outside of the 300-day statutory time period. Here, Plaintiff alleges conduct by Defendant Gumbs spanning from the summer of 2019 to July 1, 2020. *See* Am. Compl. ¶¶ 19-72. The Court therefore proceeds to consider whether Defendant Gumbs' alleged conduct is "sufficiently related" to the conduct of others alleged by Plaintiff in connection with her Title VII hostile work environment claim – namely, the playing of music with sexually explicit lyrics, which alleged conduct in part post-dates July 6, 2020, *see, e.g.*, Am. Compl. ¶¶ 80-81.[10]

As set forth above, Plaintiff alleges that Defendant Gumbs, *inter alia*, "was leering at her and grinning;" "would make kissing gestures, winking, raising his eyebrows, and passing sexual comments;" "showed Plaintiff a picture of her resting on a recliner in the breakroom, while grinning, raising his eyebrows up and down, and nodding at her;" showed Plaintiff a video on his phone of "a man and a woman having rough sex;" made "a masturbating gesture" in response to something Plaintiff said; threw a surge protector at Plaintiff; and brought the top of a recycling bin crashing down on Plaintiff's right shoulder blade. Also as set forth above, Plaintiff alleges that "the employees played music which included sexually explicit lyrics on their personal Bose and JB speakers as well as on Home Depot's merchandise speakers while they worked during the night shift;" that in or around late November or early December 2020, "Home Depot told their employees on the night shift that they could not wear earbuds while they worked due to safety concerns;" and that "[t]he co-workers and supervisor Tysheem continued to play 'sexually explicit music' over and over."

Defendant Gumbs' alleged conduct is not sufficiently related to the alleged music-

---

[10] Defendant Home Depot does not appear to dispute that Plaintiff has alleged at least one act post-dating July 6, 2020. *See generally* Def. Br.

playing conduct of Plaintiff's other coworkers such as to be part of the same alleged hostile work environment practice. Plaintiff does not allege that Defendant Gumbs was one of the employees who played – or otherwise was involved with – the sexually explicit music. Plaintiff also does not allege that the conduct by Defendant Gumbs and the music-playing conduct took place in the same location.[11] Moreover, Defendant Gumbs' alleged conduct is not sufficiently similar in kind to the alleged music-playing conduct of Plaintiff's other coworkers.

Defendant Gumbs' alleged conduct is not sufficiently related to the alleged music-playing conduct such as to render the former and the latter part of a continuing violation. *See, e.g.*, *Dziedzic v. State Univ. of New York at Oswego*, 648 F. App'x 125, 128 (2d Cir. 2016) (noting, *inter alia*, that the alleged conduct by "different co-workers in a different section of the paint department" was not sufficiently related to other alleged conduct to constitute a continuing violation); *Borden*, 2025 WL 754147 at *4, *8 (concluding that conduct perpetrated by two different supervisors that was separated in time by nearly two years and different in nature did not constitute the same alleged hostile work environment practice and granting partial motion to dismiss); *McGullam*, 609 F.3d at 78.

Plaintiff's First Cause of Action to the extent premised on conduct by Defendant Gumbs is dismissed as untimely.

## II.     Plaintiff's Second and Ninth Causes of Action

Defendant Home Depot argues that neither Plaintiff's Title VII retaliation claim (Second

---

[11] To the extent that Plaintiff alleges the location of the conduct by Defendant Gumbs, she alleges that the conduct took place in or near the breakroom. *See* Am. Compl. ¶¶ 24-25, 28, 40-45, 50-53. Plaintiff does not allege where the music was allegedly played, although she does allege that the music was played by the coworkers "while they worked," *see, e.g.*, Am. Compl. ¶¶ 73, 77, suggesting that the alleged music-playing conduct was taking place somewhere other than the breakroom.

Cause of Action) nor Plaintiff's ADA disability discrimination claim (Ninth Cause of Action) is reasonably related to the claims Plaintiff asserted in the EEOC Charge and that therefore the Second and Ninth Causes of Action must be dismissed for failure to exhaust administrative remedies. *See* Def. Br. at 11-16; Reply at 6-10.

With respect to the Title VII retaliation claim, Defendant Home Depot argues, *inter alia*, that "[g]iven the absence of factual allegations in the EEOC Verified Complaint relating to the termination of her employment with Home Depot, or the two-year leave of absence plaintiff took following her long-term COVID diagnosis . . . , the EEOC did not have adequate notice to investigate the circumstances underlying Home Depot's May 2023 decision to terminate plaintiff's employment." *See* Def. Br. at 13-14.[12]

With respect to the ADA disability discrimination claim, Defendant Home Depot argues, *inter alia*, that Plaintiff's EEOC Charge "contains no mention of plaintiff's alleged disability, or her two-year disability leave of absence, and makes no attempt to assert a claim of disability discrimination." *See* Def. Br. at 15-16; *see also* Reply at 6-7.

Plaintiff argues that her Title VII retaliation claim is not barred "despite its absence from the EEOC Complaint," *see* Pl. Br. at 9-11, and that her ADA claim should not be dismissed "despite the absence of a separate EEOC filing," *see* Pl. Br. at 12-14. As to each claim, Plaintiff argues that the claim "is reasonably related" to the allegations in the EEOC Charge. *See* Pl. Br. at 10, 14.

For the reasons set forth below, Plaintiff's Second Cause of Action to the extent premised

---

[12] In addressing the Second Cause of Action in its briefing on the Motion, Defendant Home Depot appears to focus solely on Plaintiff's Title VII retaliation claim to the extent premised on termination of employment. *See* Def. Br. at 13-15; Reply at 6; *see also* Pl. Br. at 9-12. The Court therefore herein addresses the Title VII retaliation claim only to the extent premised on termination of employment.

on Defendant Home Depot's termination of Plaintiff's employment and Plaintiff's Ninth Cause of Action are dismissed.

## A. Applicable Law

Before bringing a claim pursuant to Title VII or the ADA, plaintiffs generally must exhaust administrative remedies, which includes filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5; 42 U.S.C. § 12117(a); *see, e.g.*, *Rosado v. Port Auth. of New York & New Jersey*, No. 22-587, 2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024) (stating that "[a]s with claims under Title VII, plaintiffs asserting claims under the ADA must first file a charge of discrimination with the EEOC"); *Anderson v. City of New York*, 712 F. Supp. 3d 412, 425 (S.D.N.Y. 2024) (stating that "Title VII and the ADA requires a plaintiff to first exhaust her administrative remedies before filing suit in federal court" and that "[e]xhaustion requires timely filing of charges with the EEOC and obtaining notice of the right to sue").

"Claims not asserted before the EEOC may still be pursued in a subsequent federal action if they are 'reasonably related to those that were filed with the agency.'" *Rosado*, 2024 WL 658776, at *2 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). As relevant here, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id*. (quoting *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003)).[13]

---

[13] Although the Second Circuit has stated that "[s]ubsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge," *see Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)), as Defendant Home Depot accurately notes, prongs two

In determining whether a claim is reasonably related to the claims in an EEOC charge, courts "focus 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *See Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Deravin*, 335 F.3d at 201). "It is the substance of the charge and not its label that controls." *Mathirampuzha v. Potter*, 548 F.3d 70, 76-77 (2d Cir. 2008) (alteration accepted) (quoting *Deravin*, 335 F.3d at 201). The "central question" is whether the complaint filed with the EEOC gave the agency adequate notice to investigate the claims being raised in the federal action. *See id*. at 77 (quoting *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)).

"[C]ourts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 440 (S.D.N.Y. 2023) (quotation omitted) (noting that "courts have consistently found that claims of race discrimination are not reasonably related to claims of disability discrimination" and collecting cases); *see McPhatter v. New York City*, No. 06-CV-01181, 2009 WL 2412980, at *6 (E.D.N.Y. July 30, 2009) (noting that "a claim of gender discrimination cannot be said to be 'reasonably related' to a claim of discrimination based on race, color, or disability" and that "[i]ncidents of gender discrimination would not reasonably be expected to fall within the scope of the investigation resulting from plaintiff's racial discrimination charge"), *aff'd*, 378 F. App'x 70 (2d Cir. 2010).

---

and three are inapplicable here in light of the allegations in the Amended Complaint, *see* Def. Br. at 14-16; *see generally* Am. Compl.

**B. Plaintiff's Second Cause of Action to the Extent Premised on Termination of Plaintiff's Employment Is Dismissed**

Plaintiff did not assert a claim for retaliation against Defendant Home Depot – premised on termination of employment or otherwise – in the EEOC Charge. *See* ECF No. 25-2 at 4-7.[14] The Court therefore considers whether Plaintiff's Title VII retaliation claim premised on termination is reasonably related to any claim asserted in the EEOC Charge such that Plaintiff exhausted her administrative remedies.

Plaintiff alleges in the Amended Complaint that in February 2024, she was informed that she had been fired from her job effective May 2023, *see* Am. Compl. ¶ 87; *see also* Am. Compl. ¶ 17, and, as noted above, alleges – somewhat inconsistently – both that "Defendant terminated Plaintiff's employment due to her disability," *see* Am. Compl. ¶ 172; *see also* Am. Compl. ¶¶ 179, 201, and that she "believes that Defendant Home Depot fired her because she had filed the present lawsuit against the Defendant Home Depot in January 2024 and had previously complained about sexual harassment, assault, and battery at work and had a disability," *see* Am. Compl. ¶ 88. In the EEOC Charge, Plaintiff set forth various factual allegations, *see* ECF No. 25-2 at 4-6, and charged that Defendant Home Depot discriminated against her "because of her gender" and "on the basis of her sex," *see* ECF No. 25-2 at 7. Absent from the EEOC Charge – which was filed long before Plaintiff's termination – is any reference to Plaintiff's alleged disability due to COVID, *see* ECF No. 25-2 at 4-7, which stands to reason given that Plaintiff alleges that she was not diagnosed with COVID until *after* she filed the EEOC Charge. *See* Am. Compl. ¶ 85 (alleging that Plaintiff was diagnosed with COVID in June 2021); ECF No. 25-2 at

---

[14] The EEOC Charge does, however, state that "Complainant charges that *Respondent Gumbs* has retaliated against her in violation of § 8-107(7) of the Code because she opposed an unlawful practice and has damaged her thereby." *See* ECF No. 25-2 at 7 (emphasis added).

7 (reflecting that Plaintiff swore to the truth of the EEOC Charge on May 3, 2021).

Because the EEOC Charge made no mention of any disability – which Plaintiff alleges was *the* reason (or at the least, *one* reason) for her termination – Plaintiff's Title VII retaliation claim to the extent premised on Plaintiff's termination of employment due to disability would not fall within the scope of the EEOC investigation which could reasonably be expected to grow out of the charge made and Plaintiff's Title VII retaliation claim to the extent premised on Plaintiff's termination of employment due to disability is dismissed for failure to exhaust.

Plaintiff's Title VII retaliation claim to the extent premised on termination of employment for reasons other than disability also must be dismissed. Even assuming *arguendo* that Plaintiff has exhausted her administrative remedies as to such claim, Plaintiff nevertheless fails to state a claim. Plaintiff does not, *inter alia*, adequately allege a causal connection between any protected activity and her termination. *See McKinney v. County of Dutchess*, No. 24-1195, 2025 WL 1499364, at *2 (2d Cir. May 27, 2025) (stating that to state a claim for retaliation under Title VII, a plaintiff must plead facts that would tend to show, *inter alia,* that "there exists a causal connection between the protected activity and the adverse action" (quoting *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007))).[15] Although Plaintiff alleges that she "believes" that Defendant Home Depot fired her because (in addition to having a disability) "she had filed the present lawsuit against the Defendant Home Depot in January 2024 and had previously complained about sexual harassment, assault, and battery at work," she does not adequately

---

[15] In light of Plaintiff's failure to adequately plead a causal connection, the Court need not conclusively determine whether Plaintiff's Title VII retaliation claim to the extent premised on termination of employment for reasons other than disability is reasonably related to any claim in the EEOC Charge.

plead facts to support this conclusory allegation.[16]

Plaintiff's Second Cause of Action to the extent premised on Defendant Home Depot's termination of Plaintiff's employment is dismissed.

## C. Plaintiff's Ninth Cause of Action Is Dismissed

Plaintiff did not assert a disability-related claim against either Defendant in the EEOC Charge. *See* ECF No. 25-2 at 4-7. The Court therefore considers whether Plaintiff's ADA claim is reasonably related to any claim asserted in the EEOC Charge such that Plaintiff exhausted her administrative remedies.

With respect to her ADA claim, Plaintiff alleges in the Amended Complaint, *inter alia*, that she suffered from COVID and applied for disability leave because of COVID; that Defendant Home Depot failed to provide Plaintiff with reasonable accommodation; and that Defendant Home Depot terminated Plaintiff's employment due to her disability. *See* Am. Compl. ¶¶ 167-75.

In the EEOC Charge, Plaintiff set forth various factual allegations, *see* ECF No. 25-2 at 4-6, and charged that Defendants discriminated against her "because of her gender;" that Defendant Gumbs "retaliated against her . . . because she opposed an unlawful practice and has damaged her thereby;" that Defendant Gumbs "has by force knowingly injured, intimidated, or interfered with Complainant . . . because of her gender;" and that Defendant Home Depot

---

[16] Notably, Plaintiff alleges that in June 2021 – which was long before her termination – she applied for leave and she does not allege that she complained to Defendant Home Depot after applying for leave. *See generally* Am. Compl.; *see, e.g.*, *Anderson*, 712 F. Supp. 3d at 429 (granting defendant's motion to dismiss plaintiff's Title VII retaliation claim and noting that "the time between the filing of her final EEOC complaint in October 2021 and her termination in February 2022 is 'too attenuated to establish causation'" (quoting *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 155 (E.D.N.Y. 2015))). And Plaintiff acknowledges that her employment was terminated before the filing of the instant action.

discriminated against Plaintiff "on the basis of her sex," *see* ECF No. 25-2 at 7.

Plaintiff's ADA claim is not reasonably related to the claims in the EEOC Charge. Plaintiff's ADA claim would not fall within the scope of the EEOC investigation which could reasonably be expected to grow out of the charge made. As noted above, absent from the EEOC Charge is any reference to Plaintiff having COVID, which is the only disability Plaintiff appears to allege. Also as noted above, Plaintiff was not diagnosed with COVID until *after* she swore out the EEOC Charge and her employment was not terminated until long after she swore out the EEOC Charge. *See* Am. Compl. ¶ 87.

Plaintiff's Ninth Cause of Action is dismissed for failure to exhaust.

## III. Plaintiff's Seventh and Eighth Causes of Action

Defendant Home Depot argues that "[b]y failing to oppose Home Depot's motion to dismiss [Plaintiff's Seventh and Eighth Causes of Action], plaintiff has abandoned these claims, which should be dismissed with prejudice." *See* Reply at 1.

For the reasons set forth below, Plaintiff's Seventh and Eighth Causes of Action are dismissed.

### A. Applicable Law

In a case in which the parties are represented by counsel, "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *See Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)); *McNair v. Ponte*, No. 16-CV-01722, 2019 WL 1428349, at *6 (S.D.N.Y. Mar. 29, 2019) (noting that "[a] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed" (quotation omitted));

*Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018) (noting that "[d]istrict courts in [the Second Circuit] have found that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims" and collecting cases (alteration accepted)).

### B. Plaintiff's Seventh and Eighth Causes of Action Are Dismissed

Although in opposing the Motion, Plaintiff raises various arguments with respect to the First, Second, and Ninth Causes of Action, *see* Pl. Br. at 8-14, Plaintiff does not raise arguments with respect to the Seventh and Eighth Causes of Action, *see generally* Pl. Br. Indeed, to the contrary, Plaintiff states that she "concedes the assault and battery claim." *See* Pl. Br. at 14 n.2.

The Court deems the Seventh and Eighth Causes of Action to have been abandoned and dismisses those Causes of Action as abandoned.[17]

\* \* \*

---

[17] In its opening brief, Defendant Home Depot argued that the Seventh Cause of Action must be dismissed as time-barred and that the Eighth Cause of Action must be dismissed because there is no private cause of action. *See* Def. Br. at 2, 16-18. In light of Plaintiff's abandonment of the Seventh and Eighth Causes of Action, the Court need not – and does not – address these additional arguments.

**CONCLUSION**

For the reasons set forth above, Defendant Home Depot's Motion to Dismiss, ECF No. 25, is granted as follows: Plaintiff's First Cause of Action to the extent premised on conduct by Defendant Gumbs is dismissed; Plaintiff's Second Cause of Action to the extent premised on Defendant Home Depot's termination of Plaintiff's employment is dismissed; Plaintiff's Seventh Cause of Action is dismissed; Plaintiff's Eighth Cause of Action is dismissed; and Plaintiff's Ninth Cause of Action is dismissed.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated:  September 8, 2025
        Brooklyn, New York